■ In the Matter of ESTHER BENENSON, Doing Business as FLUSHING MANOR NURSING HOME, Petitioner, v DAVID AXELROD, as Commissioner of the Department of Health of the State of New York, et al., Respondents. — Casey, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of respondent Commissioner of Health which reduced petitioner's Medicaid reimbursement rates for the years 1972 and 1973.

At issue in this proceeding is whether there is a rational basis for the determination of respondent Commissioner of Health which disallowed, as a property cost reimbursable under the Medicaid program, the $255,000 paid by petitioner to acquire sole ownership of the partnership and corporation which operated the Flushing Manor Nursing Home and owned the facili-

ties. We conclude that the determination is not irrational and is supported by substantial evidence in the record.

In a prior determination, the Commissioner had disallowed this $255,000 cost on the theory that petitioner acquired the business in a non-arm's length transaction, involving petitioner's sister, her brother-in-law and her former husband, which constituted "a reorganization" within the meaning of a Federal regulation that excludes from a provider's equity capital the cost of goodwill that has been internally generated from a reorganization. Noting that petitioner had failed to show how the $255,000 was divided between tangible assets and goodwill, the Commissioner disallowed the full amount. Petitioner commenced a CPLR article 78 proceeding to review the prior determination. This court held that "[t]he commissioner's interpretation of the word 'reorganization' in the regulation as including the transactions by which petitioner became the sole owner of the Flushing Manor Nursing Home is neither irrational nor unreasonable", but the regulation "does not create a presumption that all costs of a reorganization are attributable to internally generated goodwill" (*Matter of Benenson v Axelrod,* 79 AD2d 752, 753). We concluded, therefore, that "[a]ppropriate steps must be taken to allow petitioner the opportunity to establish the value of the assets, other than goodwill, that she received in the transactions" (*id.*). At the subsequent hearing, petitioner presented proof of the value of the various tangible assets, such as the building, land and furniture, as of the date she acquired those assets in the buy-out of her former business associates. The Commissioner again disallowed the entire $255,000 paid by petitioner and this proceeding ensued.

Initially, we reject petitioner's claim that this court's prior decision mandates inclusion, as an allowable capital cost, of the value of any tangible asset acquired by petitioner in the buy-out, for our holding was much more limited in scope. In the prior proceeding, the sole basis for the Commissioner's disallowance of the $255,000 was his conclusion that the entire amount was attributable to internally generated goodwill. We held only that it was irrational to attribute the entire $255,000 to internally generated goodwill, since petitioner concededly received some tangible assets in addition to goodwill. We expressed no opinion as to whether the portion of the $255,000 attributable to the tangible assets should be included as a reimbursable cost or whether it should be excluded for some reason other than the goodwill concept. Nor could we have sustained the Commissioner's disallowance on some other theory (*Matter of Parkmed Assoc. v New York State Tax Commn.,* 60 NY2d 935).

In again disallowing the entire cost paid by petitioner in the buy-out of her former business associates, the Commissioner has not attributed this entire cost to internally generated goodwill. Rather, the second determination is based upon findings that petitioner's acquisition of the nursing home business was a non-arm's length transaction among relatives, which was sustained by this court in the prior proceeding (*Matter of Benenson v Axelrod, supra*), and that in the buy-out, petitioner did not acquire any additional tangible assets other than those previously owned and used by the business, a fact not disputed by petitioner. Applying Federal regulations, the State counterpart of which appeared in 10 NYCRR 86.28 (*now* 10 NYCRR 86-2.26), to the above findings of fact, the Commissioner concluded that reimbursement for the cost of the tangible assets received by petitioner should be the cost to the "related organization" from which petitioner acquired sole ownership of the nursing home in the buy-out. The Commissioner found this cost to be the historical cost of the facility, as recorded in the facility's ledgers, and that petitioner had been reimbursed on the basis of this total historical cost. Accordingly, the Commissioner concluded that the $255,000 paid by petitioner to her former business associates was not an allowable cost for reimbursement purposes.

The Commissioner also noted that under Federal regulations, "Medicaid does not permit the restatement of asset accounts to current market value levels for reimbursement purposes" (*see,* Medicare & Medicaid Guide [CCH], at 4660, 4670). Based upon this principle (*see also,* 10 NYCRR 86-2.21), the Commissioner concluded that the $255,000 should be disallowed since "the assets of the nursing home, which had originally been purchased at one price, were later revalued or 'repurchased' as part of a buy-out at a much higher price". The Commissioner's factual findings are supported by substantial evidence and we find nothing irrational in his determination to disallow the purchase price paid by petitioner to her former business associates in the non-arm's length transaction (*see, Matter of Cantor v Axelrod,* 63 NY2d 965; *Matter of Demisay v Axelrod,* 87 AD2d 667, 668, *lv denied* 57 NY2d 602; *see also, Rio Hondo Mem. Hosp. v United States,* 689 F2d 1025).

We again reject petitioner's claim that since the buy-out predated implementation of the Medicaid program, the Commissioner could not base his determination on the regulations (*Matter of Benenson v Axelrod, supra*). Also lacking in merit is petitioner's claim that the Commissioner erred in reaching a conclusion that differs, in part, from that arrived at by the

administrative law judge. The cases cited by petitioner do not support her claim that the Commissioner has a limited scope of review of a report by an administrative law judge. In proceedings such as this, the question is whether the Commissioner's determination, not the hearing officer's report, is supported by substantial evidence and has a rational basis (*see, Matter of Fahey v Public Health Council,* 89 AD2d 702, *appeal dismissed* 58 NY2d 778). Finally, in the absence of any showing of substantial prejudice, petitioner's claim that the determination must be annulled, on due process grounds, because of various delays is rejected (*see, Matter of Sarkisian Bros. v State Div. of Human Rights,* 48 NY2d 816; *Matter of Axelrod v Villar,* 103 AD2d 1007).

Determination confirmed, and petition dismissed, without costs. Kane, J. P., Casey, Mikoll, Levine and Harvey, JJ., concur.