David Axelrod, M.D. Commissioner New York State Department of Health
Your counsel has requested our opinion as to whether the Department of Health can interpret and enforce those provisions of the General Business Law which proscribe kickbacks and other exchanges of consideration by clinical laboratories and health service providers.
Article 38 of the General Business Law (GBL, §§ 801-803) was enacted in 1976, and seeks to "clarify and strengthen existing laws[*] and regulations prohibiting `kickback' and `fee-splitting' schemes between health practitioners and clinical laboratories" (Budget Report on Bills, Legislative Bill Jacket, L 1976, ch 905). The law was passed as a reaction to economic arrangements between health service providers and laboratories which were seen as creating financial incentives for medically unnecessary tests (ibid.). General Business Law, § 801
contains a general prohibition against referral fees paid to health service purveyors by clinical laboratories:*
 "No health service purveyor or his agent, employee or fiduciary shall solicit, receive, accept or agree to receive or accept any payment or other consideration in any form to the extent such payment or other consideration is given for the referral of services. . ." (GBL, § 801[1]; emphasis supplied).
A parallel provision prohibits clinical laboratories from offering these same payments that health service providers are prohibited from receiving (GBL, § 801[2]).
Violation of any of these provisions is a misdemeanor, punishable by a fine of between $250 and $1000, or a fine, fixed by the sentencing court, not to exceed double the amount of the defendants' gain from the violations (id., § 802).
In addition to this general prohibition, article 38 also contains a schedule of particular financial transactions that are unqualifiedly prohibited. These transactions include payments to health service providers by clinical laboratories for storage space, provision of technical employees to health service providers by clinical laboratories, interest paid to providers on deposits held by clinical laboratories, commissions paid to providers according to the number of laboratory tests performed, and the use of prepayment instruments such as coupons, tickets or booklets (ibid.).
The Department of Health has general authority to regulate clinical laboratories, and the specific provisions governing regulation of laboratory services are set forth in title 5 of article 5 of the Public Health Law. In enacting title 5, the Legislature found that "[t]he proper performance of laboratory services is a matter of vital concern, affecting the public health, safety and welfare", which "requires affirmative action to insure that the performance of laboratory and blood banking services meet high standards of public health care" (Public Health Law, § 570). To carry out this purpose, the Department of Health regulates clinical laboratories by issuing both certificates of qualification (id., §§ 572, 573) and laboratory permits (id., §§ 574, 575).** The Department is also given the power to inquire into the operation of clinical laboratories and to "conduct periodic inspections of facilities, methods, procedures, materials, staff and equipment" (id., § 576[1]; see American Association of Bioanalysts vAxelrod, 106 A.D.2d 53 [3d Dept], app dsmd 65 N.Y.2d 847 [1985]).
Section 576 also gives the Department power to "adopt and amend rules and regulations to effectuate the provisions and purposes of . . . title [5]" (id., § 576[4]). 10 NYCRR, § 58-1.11, promulgated pursuant to this authority, provides as follows:
 "When requested, a laboratory shall submit reports containing such information and data concerning its technical operation as may be specified by the department. Such reports shall be signed both by the owner and director of the laboratory" (10 NYCRR, § 58-1.11).
As an enforcement mechanism, title 5 also gives the Department the power to revoke, suspend, limit or annul laboratory permits and certificates of qualification (id., § 577). The grounds for these disciplinary actions are set forth in section 577 and include misrepresentations by applicants, incompetence and violation of any of the provisions of title 5, any of the rules and regulations promulgated thereunder, or the State sanitary code (id., § 577[1]). We believe that these enforcement procedures can be used against applicants that violate the kickback prohibitions in the General Business Law.
In addition to the Commissioner's general mandate to protect the public's interest in health matters, the Public Health Law recognizes that regulation of clinical laboratories requires affirmative action to ensure that the high standards of public health care are met (Public Health Law, §§ 206[1][a], 570). Furthermore, the Department's regulations require clinical laboratories to submit reports detailing their operation (10 NYCRR, § 58-1.11). These provisions indicate that the Commissioner's investigative power is broad and substantial.
If, in the course of an investigation under title 5 a laboratory director or a clinical laboratory is found to be involved in kickbacks or fee splitting, we believe that the Department would be justified in denying or revoking licensure. It is well settled that an agency's power to withhold a license for good cause and the standards defining such decisions need not be expressly delegated by the Legislature, where by fair implication in light of the statutory purpose, such power has been implicitly delegaged (Matter of Barton Trucking Corp. v O'Connell, 7 N.Y.2d 299, 307
[1959]; 1985 Op Atty Gen 14, 15). Licensing officials have implicit discretion to pass on the fitness of the applicant and are not limited to the criteria listed in their enabling legislation (ibid.; Matter ofHowell v Benson, 90 A.D.2d 903 [3d Dept, 1982]). In addition, Public Health Law, § 573(2) includes a requirement that an applicant for a certificate of qualification demonstrate that he possesses the character to administer properly the operation of a clinical laboratory.
In our view, a clinical laboratory or its director's involvement in a kickback or fee-splitting scheme could reasonably form the basis of a decision that a license should be revoked or denied. The provisions in the General Business Law adequately show that these activities are against public policy and detract from the health care services provided by clinical laboratories and their directors. Participation in these schemes seriously compromises suitability to render clinical laboratory services. A finding by the Department that an applicant has violated the anti-kickback and fee-splitting laws and therefore is unfit for licensure, like any administrative determination, could properly form the basis for the denial of the license if supported by substantial evidence and rationally based (CPLR § 7803[3]; Matter of CortlandNursing Care Center v Whalen, 46 N.Y.2d 979 [1979]; Matter of Benenson vAxelrod, 111 A.D.2d 453, 455 [3d Dept, 1985]; Matter of City of Rome vNYS Health Dept., 65 A.D.2d 220, 224 [4th Dept, 1978], mot for 1v to app den 46 N.Y.2d 713 [1979]).
It follows that because the Department has the authority to take violations of the General Business Law into consideration when making licensing decisions, it may adopt regulations which describe the grounds on which these decisions are made. We note, however, that the Department does not have the authority to enforce directly violations of the General Business Law. As the legislative history of article 38 of the General Business Law indicates, the effect of placement of the anti-kickback provisions outside the Public Health Law was recognized at the time of enactment (letters of Robert D. Stone, Counsel to State Education Dept., June 1, 1976, July 9, 1976; letter of Donald A. MacHarg, Counsel to State Health Dept., June 4, 1976, Legislative Bill Jacket, L 1976, ch 905).
The opinion request also includes three letters which describe various agreements involving assignments of consideration between health service providers and clinical laboratories and asks whether each of these agreements is legal. Determinations as to whether these agreements are violative of article 38 can only be made following an investigation to determine the underlying facts. Accordingly, a ruling on their legality is beyond the scope of this opinion.
We conclude that when issuing a clinical laboratory permit or a certificate of qualification, in addition to the specific statutory criteria, the Department of Health may take into consideration violations of the anti-kickback provisions of the General Business Law in order to determine whether the applicant is fit for licensure. A license may be revoked for a violation of these provisions.
* In addition to the prohibitions against kickbacks contained in article 38, GBL, § 394-e (first setout) also regulates this area. Furthermore, Education Law, § 6509-a contains a prohibition against fee-splitting in the health care field (see State v AbortionInformation Agency, Inc., 37 A.D.2d 142 [1st Dept, 1971], affd30 N.Y.2d 779 [1972]).
* GBL, § 800 defines these terms in the following way:
 ". . . `health services purveyor' means any person, firm, partnership, group, association, corporation or professional corporation, or any agent, employee, fiduciary, employer or representative thereof . . . who provide[s] health or health related services" (id., § 800[1]).
• • •
 "`Clinical laboratory' means a facility for the microbiological, serological, chemical, hematological, biophysical, cytological or pathological examination of materials derived from the human body, for the purpose of obtaining information for the diagnosis, prevention, or treatment of disease or the assessment of medical condition" (id., § 800[2]).
** The certificate of qualification ensures that the laboratory's director meets the minimum qualifications in microbiology, serology, chemistry, hematology, biophysics, cytology or pathology, set by the public health council (PHL, § 573[1], [2]). The certificate is valid for a period of five years, and is renewable thereafter for five-year periods (id., § 573[4]).
Laboratory permits are valid for the calendar year in which they are issued (id., § 575[4]). Permits will not be issued unless the laboratory director has been issued a valid certificate of qualification and the facility is competently staffed and properly equipped (id.,
§ 575[2]).