In the Matter of the CITY OF ROME, Petitioner, v NEW YORK STATE HEALTH DEPARTMENT et al., Respondents.

Fourth Department, December 15, 1978

## APPEARANCES OF COUNSEL

*Thomas J. Spargo, Corporation Counsel* (*David C. Grow* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*William Buss, Stanley Fishman, Olin Harper Le Compte* and *Ruth Kessler Toch* of counsel), for respondents.

## OPINION OF THE COURT

DILLON, J.

We are here asked to review a determination by the State Commissioner of Health (Commissioner) made pursuant to section 1107 of the Public Health Law ordering the City of Rome to submit within one year an engineering plan "to include a construction timetable * * * for the construction of a complete water treatment facility including filtration."[1] The order also directs public officials of the city to explore and plan means of financing the project and to make monthly progress reports thereon to the Department of Health (Department).

Between November 1, 1974 and June 7, 1975 there was a severe outbreak in Rome of parasitic disease known as giardiasis. The disease is caused by a one-celled protozoan organism described as giardia lamblia, and its significant symptoms include abdominal discomfort, nausea, loss of appetite and recurring episodes of diarrhea. Although it is not fatal, the disease can be chronically debilitating.

Since it is believed that the infectious organism is water borne, Rome's public water supply was first studied by officials of both the Oneida County and State Health Departments, and was later examined by the Center for Disease Control of the United States Public Health Service (CDC). Prior to the completion of the investigation by CDC, however, the Commissioner determined upon his own investigation that the Rome water supply was "so polluted or subject to dangerous pollution or of such objectionable biological and physical quality as to constitute a menace to the public health."

---

1. Section 1107 of the Public Health Law provides as follows:

"1. When the commissioner, after investigation of the condition of any public water supply used for drinking or other domestic purposes, whether maintained and operated by a municipality, water district or private corporation, company or individual, shall certify to the board, corporation, company, officer or person in charge of the maintenance and operation of such water supply that in his opinion such water supply is so polluted or subject to dangerous pollution or so inadequate or of such objectionable physical quality as to constitute a menace to the public health and shall order reasonable improvements to be made for the protection of public health and such municipality, water district or private corporation, company or individual maintaining and operating such water supply shall fail to carry out such order forthwith, any court of competent jurisdiction may, upon the application of the commissioner, enforce prompt compliance with such order.

"2. Service of the certificate by the commissioner as aforesaid shall be made upon the mayor or corporation counsel of the municipality or upon an officer of the water district or private corporation or company as the case may be."

In an order dated July 18, 1975 the Commissioner directed city officials to make several "reasonable improvements for the protection of the public health", including: (1) discharge of maximum allowable chlorine dosages into the city's 50-million gallon reservoir; (2) daily sampling; (3) introduction of a cysticidal chlorination dosage by means of a semipermanent chlorination station until a water treatment facility with filtration was constructed and functioning; (4) expedited cleaning of city reservoirs and water mains; (5) inspection of the city's watershed; and (6) submission of a satisfactory engineering report to include a timetable for construction of complete water treatment facilities, including filtration.

The city instituted an article 78 proceeding to annul the Commissioner's order. Following negotiations, however, the parties consented to a judgment which essentially required Rome to comply with the order, save the requirement to submit an engineering report for construction of a water treatment facility. The parties stipulated at that time that the Department would hold a hearing to determine whether submission of such an engineering report was necessary, with Rome reserving the right to obtain judicial review of any subsequent order which the Commissioner might issue.

On completion of the hearing held pursuant to the stipulation, the hearing officer found that Rome experienced an epidemic of giardiasis; that giardia cysts were discovered in water taken from the Rome water supply; that the high dosage of chlorine introduced into the water supply as a temporary measure to kill giardia organisms created "another substance which makes the water possibly carcinogenic"; and that the water supply was unsatisfactory due to high levels of coliform bacteria, high corrosivity, high turbidity, and poor color. The hearing officer concluded that the giardiasis outbreak in Rome resulted from organisms in the water supply, that the water supply was of an unsatisfactory quality and potentially dangerous to the public health, and that basic problems with the water supply continued to exist. He recommended that the Commissioner order Rome to submit an engineering report, including a timetable for construction of a water treatment facility. In an order dated August 10, 1977 the Commissioner adopted the hearing officer's report and directed Rome city officials to submit the engineering plan.

In this article 78 proceeding to annul the Commissioner's determination, the city alleges that the Commissioner's find-

ings and conclusions are arbitrary, unreasonable, capricious and not supported by substantial evidence; that the order was an abuse of the Commissioner's discretion and in excess of his jurisdiction; and that section 1107 of the Public Health Law is unconstitutional as applied and is being discriminatorily enforced.

Respondents' answer asserts that the Commissioner's determination was made as a result of a hearing held, at which evidence was taken "pursuant to direction by law", thus contending that the proceeding falls within the scope of CPLR 7803 (subd 4). Thereafter the parties consented to the entry of an order directing that the matter be transferred to this court for disposition in accordance with CPLR 7804 (subd [g]).

While both sides have briefed and argued the issue of whether there is substantial evidence to support the administrative determination, that is not the proper test to be applied on review of an order issued pursuant to section 1107 of the Public Health Law. Although the hearing officer's findings, adopted by the Commissioner, are premised upon facts adduced at the hearing, such a hearing was not required by statute or law (see *Matter of Colton v Berman,* 21 NY2d 322, 329). Section 1107 permits corrective action by the Commissioner "after investigation of the condition of any public water supply" but does not require that an evidentiary hearing precede the corrective action.

The substantial evidence test applies only where a hearing has been held and the evidence taken "pursuant to direction by law" (CPLR 7803, subd 4). The full evidentiary hearing conducted here was not so mandated and thus the proper test to be applied is whether there is a rational basis for the administrative order. The courts cannot interfere unless the action complained of is arbitrary and capricious *(Matter of Colton v Berman, supra,* p 329). While the magnitude of the involved construction project and its potential fiscal impact upon the citizens of Rome are ample justification for the Commissioner having proceeded with care in agreeing to conduct a full evidentiary hearing (cf. *Matter of White Plains Nursing Home v Whalen,* 42 NY2d 838), that the hearing was held does not bring about the application of a different standard of review.[2]

---

2. For a thorough analysis on the subject of the standard of review to be applied to administrative determinations see Judicial Review of Administrative Action in New York: An Overview and Survey by Domenick L. Gabrielli (Associate Judge, New York Court of Appeals) and John M. Nonna (52 St John's L Rev, p 361).

Upon the application of either standard, however, we would confirm the Commissioner's determination. "Rationality is what is reviewed under both the substantial evidence rule and the arbitrary and capricious standard" *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; *Matter of 125 Bar Corp. v State Liq. Auth. of State of N. Y.,* 24 NY2d 174, 178), and the rational basis for the Commissioner's action is clearly established in the record.

To a large extent, petitioner's claim that the order is unfounded is based less upon the absence of evidence to support the several findings of the hearing officer than it is upon the hearing officer's apparent refusal to give weight to petitioner's conflicting evidence. In adopting that approach, petitioner misconceives our function in article 78 proceedings. The doctrine is well settled that the court is without power to upset the determination of an administrative tribunal on a question of fact and thus we may not accord differing weight to conflicting evidence *(Matter of Pell v Board of Educ., supra,* p 230; *Matter of Colton v Berman,* 21 NY2d 322, 329, *supra).*

The hearing officer concluded after extensive testimony that the outbreak of giardiasis in Rome in 1974-1975 was the result of organisms in the water supply. He found the water to be of unsatisfactory quality and potentially dangerous to the public health, and he determined that despite the introduction of temporary measures to cure the condition, "basic problems with the water supply still exist". These conclusions are overwhelmingly supported in the record.

The Rome water supply is largely open and unprotected, and it was clearly demonstrated in the testimony of experts and in the study conducted by CDC that the outbreak of giardiasis was of epidemic dimension. Indeed, it was established that the giardiasis outbreak was the largest ever reported in the United States. There was evidence that more than 10% of the city's population may have become ill and that 359 cases of the disease were positively identified.

Nor can it be disputed that giardia cysts were discovered in Rome water and that the disease was water borne. Microscopic examination of a sediment sample from the Rome water supply revealed a giardia cyst which, according to the CDC report, was highly significant because it "was the first time that a *G. lamblia* cyst had been found in municipal water in an epidemic". Moreover, it was demonstrated that pathogen

free puppies ingesting sediment from Rome's water contracted giardiasis.

■ Implicit in the finding that "basic problems with the water supply still exist" is a conclusion that there is a likelihood of a recurrence of the disease. Departmental regulations provide, *inter alia,* that "[b]iological organisms shall not be allowed in drinking water in amounts sufficient to render the water unsafe or otherwise objectionable, as determined by the State Commissioner of Health" (10 NYCRR 72.6). While the precise manner in which the disease was introduced into the water supply system was never pinpointed, the medical experts testifying for the Department were unanimous in their view that the risk of recurrence was present. It is that likelihood of recurrence, together with the Commissioner's affirmance of findings as to the water supply's high corrosivity and high coliform bacteria counts which amply satisfy the test of rationality to be applied to the conclusion that Rome's water continues to pose a potential health hazard.

The petitioner contends that the ultimate implementation of the Commissioner's order will obligate the city to expend in excess of seven million dollars for the construction of a water treatment facility. It is argued that this is not the kind of "reasonable improvement" which falls within the power of the Commissioner under section 1107 of the Public Health Law. It is claimed that the order constitutes an abuse of discretion and is arbitrary and capricious and in excess of the Commissioner's jurisdiction. We disagree.

Rome placed in the record an alternative water treatment plan which it claimed would adequately protect the public without imposing the severe financial hardship which will be occasioned under the Commissioner's order. While we reiterate that it is not for us to choose between conflicting evidence, we note that there was expert testimony that the treatment methodology proposed by Rome would not adequately address the problems posed by high coliform bacteria counts, nor was it certain to prevent the recurrence of giardia cysts in the water supply system. Furthermore, there was extensive testimony from water supply and disease control experts that a water filtration plant was essential to prevent a future outbreak of the disease. We thus conclude that the Commissioner's order is not arbitrary or unreasonable.

■■ Although the powers conferred on the Commissioner by the Legislature pursuant to section 1107 of the Public

Health Law are not precisely defined, the conditions which could cause a municipal water supply to become a certifiable health hazard are "infinitely varying" and require that the Commissioner be given the widest flexibility *(Matter of Levine v Whalen,* 39 NY2d 510, 515; *Matter of City of Utica v Water Pollution Control Bd.,* 5 NY2d 164, 168-169). Drinking water standards promulgated by the Commissioner (10 NCYRR Part 72) provide a sufficient basis upon which to make a certification that a "water supply is so polluted or subject to dangerous pollution or so inadequate or of such objectionable physical quality as to constitute a menace to the public health" (Public Health Law, § 1107, subd 1). Moreover, we adhere to the view that laws and regulations enacted to protect the public health "should be given an extremely liberal construction so as to further the accomplishment of their objectives" *(Matter of New York State Bd. of Pharmacy v Drug Purchase,* 57 AD2d 569). Thus viewed, the Commissioner's order of August 10, 1977 is both reasonable and lawful.

We have reviewed petitioner's other contentions and we find them to be without merit.

The determination should be confirmed and the petition should be dismissed.

MARSH, P. J., HANCOCK, JR., SCHNEPP and WITMER, JJ., concur.

Determination unanimously confirmed, without costs, and petition dismissed.