■ In the Matter of MICHELLE VERDELL, Respondent, v LINCOLN AMSTERDAM HOUSE, INC., Respondent, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, Appellant. [813 NYS2d 68]—

Judgment, Supreme Court, New York County (Robert D. Lippmann, J.), entered October 26, 2004, which granted petitioner's application to annul respondent Department of Housing Preservation and Development's (HPD) determination issuing a certificate of eviction, unanimously reversed, on the law, without costs, the determination confirmed, the petition denied and the proceeding brought pursuant to CPLR article 78 dismissed.

This proceeding was commenced by petitioner, a tenant in a cooperative apartment building owned by respondent Lincoln Amsterdam House, Inc., a limited profit housing company organized pursuant to article II of the Private Housing Finance Law, also known as the Mitchell-Lama law. The Legislature created this government program to encourage private development of low- and middle-income housing by offering state and local assistance to developments in the form of long-term, low-interest government mortgage loans and real estate tax exemptions. In exchange for these benefits, developers agreed to regulations concerning rent, profit, disposition of property and tenant selection. Respondent-appellant HPD is the supervising agency for the Mitchell-Lama program. The rules promulgated by HPD in carrying out its duties and obligations as supervising agency are set forth in chapter 3 of title 28 of the Rules of the City of New York. As an article II housing company organized under the Mitchell-Lama law, Lincoln House is subject to HPD rules and regulations.

Since childhood, petitioner resided in Lincoln House with her family. In 1995, petitioner requested a one-bedroom apartment in the building. Lincoln House placed her on an "internal" waiting list for existing occupants to be transferred to another apartment within the building. Sometime in 2001, the managing agent became aware that petitioner did not qualify for an internal transfer and placed her on the "external" waiting list. In March 2002, petitioner was notified that an apartment was available, and after executing the appropriate documents, including an occupancy agreement, petitioner moved into the subject apartment on May 1, 2002.

Shortly thereafter, HPD notified Lincoln House that petitioner

was not entitled to an "internal" transfer and that Lincoln House had failed to forward her application to HPD for prior approval. HPD requested that Lincoln House take immediate action to reclaim the apartment. Consequently, Lincoln House commenced an administrative proceeding against petitioner to nullify the occupancy agreement. After a hearing, held on the record and before an administrative hearing officer, HPD issued a certificate of eviction. Petitioner then commenced this article 78 proceeding to, inter alia, annul the administrative decision and rescind the certificate of eviction. In their respective answers, HPD and Lincoln House asserted as an affirmative defense that the agency determination was supported by substantial evidence. Lincoln House further requested that the matter be transferred to the Appellate Division pursuant to CPLR 7804 (g). Supreme Court did not transfer the proceeding, but instead found that, under the "unusual circumstances of this case," the agency's determination was irrational since petitioner was "entirely blameless" and Lincoln House had repeatedly violated HPD regulations.

Judicial review of an administrative determination made as the result of a hearing required by law is limited to whether that determination is supported by substantial evidence (*see Matter of Silberfarb v Board of Coop. Educ. Servs., Third Supervisory Dist., Suffolk County*, 60 NY2d 979, 981 [1983]; *Whitten v Martinez*, 24 AD3d 285 [2005]). CPLR article 78 prohibits the Supreme Court from reaching the issue of whether an agency determination is supported by substantial evidence and requires that such petitions be transferred to the Appellate Division (CPLR 7803 [4]; 7804 [g]; *see Matter of Blanco v Popolizio*, 190 AD2d 554, 554-555 [1993]). The issue of substantial evidence, although not specifically stated, was clearly raised in the instant petition. Accordingly, Supreme Court erred in entertaining the petition and ruling on its merits. We, therefore, will review the petition de novo as though it had been properly transferred (*see id.*).

Substantial evidence "means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]). "Where on the whole record the hearing officer's determination is supported by substantial evidence our review is at an end," and it is of no consequence that the record would have also supported a contrary conclusion (*Matter of Acosta v Wollett*, 55 NY2d 761, 763 [1981]).

Upon a de novo review, we find that the agency determination

is supported by substantial evidence. At the hearing, petitioner presented no evidence to support her position that she was entitled to remain in the subject apartment. HPD, on the other hand, presented more than adequate evidence that petitioner had obtained the apartment in violation of its rules. The uncontroverted testimony of HPD Director of Administrative Services for the Division of Housing Supervision established that petitioner was not eligible for the internal waiting list and that she was improperly placed on the external waiting list. Specifically, the Director testified that top priority for a vacant apartment was only offered if a resident's entire family were seeking either a larger or smaller apartment to replace the one presently occupied. The rules prohibited petitioner from receiving top priority since only she, and not her entire family, was seeking an apartment (28 RCNY 3-02 [i] [1]). Moreover, Lincoln House never received approval from HPD to put petitioner's name on the internal waiting list. While ordinarily Lincoln House would not have been required to send HPD applications for prior approval, Lincoln House was nevertheless required to do so based on previous violations of HPD rules (28 RCNY 3-21 [b]).

HPD also established that petitioner had been improperly placed on the external waiting list. The uncontroverted testimony at the hearing established that petitioner was placed on the external waiting list in 1995. However, that list, created by lottery, had been closed in 1992. The rules prohibited adding any application to the waiting list after the official closing date (28 RCNY 3-02 [h] [8] [iii]). The only way to reopen the list was by HPD's written permission, which was not given to Lincoln Housing. Again, in contravention of HPD rules, petitioner's application was not approved by HPD (28 RCNY 3-02 [h] [5]; 3-21 [b]).

It is irrelevant that petitioner may have been unaware that Lincoln House was in violation of HPD's rules and that she did not violate any rules herself. What is relevant are the undisputed facts that (1) she was not eligible according to HPD rules to be placed on an internal waiting list, (2) she was placed on a closed waiting list in violation of HPD rules, and (3) she occupies the subject apartment without prior HPD approval. That HPD could not explain why someone whose application postdated petitioner's could be properly placed in the apartment, a fact upon which Supreme Court heavily relied, has absolutely no relevance to whether substantial evidence exists to support the agency's determination that this petitioner was occupying the subject apartment in violation of HPD rules. Concur—Saxe, J.P., Marlow, Williams, Catterson and Malone, JJ.