OPINION OF THE COURT
Carol R. Edmead, J.
Petitioner Craig Yancey moves for an order and judgment, pursuant to article 78 of the CPLR: (1) annulling and vacating the determination of respondent New York City Housing Authority to terminate petitioner’s tenancy; (2) ordering the Housing Authority to reinstate petitioner’s tenancy, or in the alternative, pursuant to Housing Authority regulations, reopening the underlying termination of tenancy hearing to afford petitioner a reasonable opportunity to present and defend a fair case prior to any termination of his tenancy; (3) declaring the Housing Authority’s determination terminating petitioner’s tenancy arbitrary and capricious, contrary to law, an abuse of discretion and in violation of petitioner’s constitutional right to procedural due process; (4) granting petitioner a preliminary stay pending final determination of all issues raised in this article 78 proceeding of the Housing Authority or any marshal of the City of New York from taking any action with respect to the termination of petitioner’s tenancy or the eviction of petitioner from his apartment; (5) granting petitioner a temporary restraining order pending any decision on the above request for a preliminary stay; awarding petitioner costs and disbursements against the respondents pursuant to CPLR 8101; and awarding petitioner reasonable attorneys fees.
Background
In 1972, petitioner’s mother, Sharon Yancey, became the tenant of record for the apartment located at 505 East 120th Street, apartment 13A, New York, New York 10035, also known as the Wagner Houses, a public housing project located in the County, City and State of New York, which is operated by the Housing Authority (the apartment). Ms. Yancey resided in the apartment with petitioner, petitioner’s brother, Lydell, and Ms. Yancey’s granddaughter, Whitney Beadwiley.
After the other members of the household left the apartment, petitioner succeeded to the lease in July 1997 and was the sole authorized occupant of the apartment.
Petitioner is 38 years old and has resided at the Wagner Houses for over 33 years, since he was five years old. According *742 to the New York City Housing Authority Social Services Department, petitioner is mentally disabled and has learning disabilities. Specifically, petitioner suffers from schizoaffective disorder with depressed mood, avoidant personality disorder, obsessive compulsive personality disorder, paranoid personality disorder, and attention deficit hyperactivity disorder. However, he attends an outpatient psychiatric clinic and takes medication for his condition. Petitioner also suffers from sciatica and is on public assistance.
Respondents allege that during the period between February 18 and August 19, 2003, petitioner conspired with drug traffickers to sell narcotics. In furtherance of that conspiracy, petitioner sold heroin on the same block as his building on April 29, 2003. Initially, on June 21, 2004, the police arrested petitioner for, among other charges, criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree. Petitioner pleaded guilty to criminal sale of a controlled substance in the fourth degree, and the criminal court sentenced him to nine months’ incarceration. On June 28, 2005, the date petitioner was to be sentenced in his criminal drug case, the police arrested him for conspiracy in the second degree. Petitioner pleaded guilty to conspiracy in the second degree, and the criminal court sentenced him to one to three years’ incarceration. Petitioner served 15 months.
During that time, petitioner kept current with his rent.
Petitioner asserts that since his release, he has been substance-free, and compliant with his prescription medication and curfew.
Pursuant to the Housing Authority’s procedures, the manager sent petitioner several letters advising him she was considering terminating his lease for nondesirability and breach of rules and regulations, and offered him multiple opportunities to meet with management. After petitioner failed to appear for any of the meetings, the manager informed petitioner in writing that she was forwarding petitioner’s tenancy record to the Operations Services Tenancy Administration Division for the preparation of charges. The manager also informed petitioner he would have an opportunity for a hearing and he was entitled to be represented by an attorney.
By notice and specification of charges, dated August 10, 2006, the Housing Authority charged petitioner with the following:
“1. On or about JUNE 28, 2005, or sometime prior *743 there to, you CRAIG YANCEY, tenant of record, individually or in concert with others did engage in a conspiracy
“a) to unlawfully possess a controlled substance, to wit, heroin;
“b) to unlawfully possess a controlled substance, to wit, heroin; and
“c) did unlawfully sell a controlled substance, to wit, heroin.
“2. On or about JUNE 21, 2004, or sometime prior there to, you, CRAIG YANCEY, tenant of record,
“a) did unlawfully possess a controlled substance;
“b) did unlawfully possess a controlled substance with intent to sell it;
“c) did unlawfully sell a controlled substance;
“d) did unlawfully possess a forged instrument; and
“e) did unlawfully possess marijuana.
“BREACH OF RULES AND REGULATIONS IN THAT:
“3. You CRAIG YANCEY, tenant of record, failed to refrain from illegal or other activity ... [as required by his lease obligations].”
The notice informed petitioner the determination might result in his eviction and, if he desired to contest the charge, he could reply to the notice, appear at the hearing, and be represented by counsel.
After Hearing Officer Ester Tomicic Hines adjourned the hearing first for petitioner to retain counsel and then, after petitioner was unsuccessful in doing so, on petitioner’s application that he be evaluated for the appointment of a guardian ad litem, the hearing commenced on August 10, 2007.
Petitioner appeared with his guardian ad litem. At the outset of the hearing, petitioner’s guardian ad litem admitted the charges for nondesirability based on petitioner’s: (1) unlawful sale of heroin on or about June 28, 2005 or some time prior thereto; and (2) unlawful sale of a controlled substance on or about June 21, 2004 or some time prior thereto.
The Housing Authority introduced: (1) petitioner’s lease setting forth his obligation to refrain from any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the development by other residents or by Housing Authority employees or any violent or drug-related criminal activity; (2) the arrest report, which shows that petitioner sold heroin and *744 the police arrested him for, among other charges, criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree on June 21, 2004 and the transcript from the plea proceeding and the certificate of disposition stemming from petitioner’s June 21, 2004 arrest, which show that petitioner pleaded guilty to criminal sale of a controlled substance in the fourth degree and the criminal court sentenced him to nine months’ incarceration; and (3) the arrest report, which shows that petitioner conspired with drug traffickers and that the police arrested him for conspiracy in the second degree on June 28, 2005, and the transcript from the plea proceeding and the certificate of disposition stemming from petitioner’s June 28, 2005 arrest, which show that petitioner pleaded guilty to conspiracy in the second degree and the criminal court sentenced him to 1 to 3 years’ incarceration. After introducing these documents, the Housing Authority rested.
Petitioner admitted the charges for nondesirability based on “sale and conspiracy to sell” and conceded that he had “broken rules in the past.” Petitioner testified he had a drug problem in 2003, but claimed on direct examination he had abstained from drugs since his incarceration and participation in a drug treatment program.
However, on cross-examination, petitioner testified he had abstained from illicit drugs since April 2004 — two months before his first arrest in June 2004 for drug possession. Petitioner admitted on cross-examination he has used heroin, cocaine, and marijuana in the past. Petitioner testified he receives mental health treatment, takes medications, and is supervised by parole. Although petitioner testified he now sees his daughter, he conceded that he is the sole occupant of his apartment.
Petitioner’s guardian ad litem introduced: (1) the notice of eligibility determination from Adult Protective Services showing that petitioner was deemed eligible for services; (2) a doctor’s letter attesting to petitioner’s psychological treatment, mental condition, and negative test results for illicit drugs; and (3) a letter from petitioner’s parole officer attesting to petitioner’s compliance with the conditions of his parole. After petitioner’s testimony, petitioner’s guardian ad litem stated he “concedes the charges” but requested the Hearing Officer impose probation because petitioner had purportedly been rehabilitated. Petitioner’s guardian ad litem also stated petitioner has lived in the apartment since he was two years *745 old, he is dependant on welfare, and is disabled. Petitioner’s guardian ad litem also argued that all of the charges flow from a single incident.
The Housing Authority requested the Hearing Officer terminate petitioner’s tenancy and disputed the contention of petitioner’s guardian ad litem that all of the charges — which are based on criminal sale of a controlled substance and conspiracy — flowed from a single incident.
By decision, dated April 1, 2008, the Hearing Officer recounted the documents admitted into evidence and petitioner’s testimony. The Hearing Officer then ruled, in part, as follows:
“Charges lc, 2c and 3 are sustained and the balance of charges are dismissed. The tenant pled guilty to PL 220.34. Criminal Sale of a controlled substance in the fourth degree, a C felony and PL 105.15. Conspiracy in the second degree, a B felony. The tenant’s current drug free status, parole compliance and attendance in a mental health treatment program are admirable but cannot mitigate the disposition herein in view of his guilty pleas to conspiracy and sale of a controlled substance, both felony convictions. This disposition is consistent with HUD v Rucker, 535 US 125 (2002) in which the US Supreme Court upheld the constitutionality and enforceability of 42 U.S.C.§ 1437d (1) (6), which requires public housing authorities to use leases in which any drug related criminal activity on or off housing authority premises, engaged in by a public housing tenant shall be cause for termination of tenancy.” (Emphasis added.)
On April 30, 2008, the Housing Authority approved the Hearing Officer’s decision to terminate petitioner’s tenancy. The instant article 78 proceeding thus ensued.
Petitioner’s Contentions
If his petition is dismissed, and his tenancy at the Wagner Houses is terminated, petitioner will be homeless.
Petitioner argues that his guilty plea stemmed from his actions on a single date — April 29, 2003. During the hearing to terminate his tenancy, the Housing Authority presented its case in a manner that made it appear as though petitioner was a repeat offender by implying that the criminal charge for sale of a controlled substance and the criminal charge for conspiracy arose from two distinct incidents. Furthermore, at the hearing *746 the Housing Authority attorney refused to stipulate that the charges arose from a single incident, despite direct evidence to the contrary.
Since petitioner’s release from jail on September 26, 2006, he has completed a substance abuse program and has been substance free. Additionally, petitioner has attended mental health group sessions and has been compliant with his prescription medication. He has religiously met with his parole officer and has been compliant with his curfew.
Petitioner has not been arrested since his release from jail.
Petitioner has a five-year-old daughter who lives one block away from him, and he is an involved parent, often bringing his daughter to, or picking her up from, school.
Also, petitioner is a valued member of the community. He runs a basketball tournament called “Streets Teaching Adults and Teenagers Sportsmanship,” which has over 150 participants and 120 games throughout the season, most of which take place in petitioner’s current neighborhood.
Petitioner is also very involved in another community basketball tournament named “Together We Chill.” These basketball tournaments are aimed at keeping community youth out of trouble by enabling them to engage in productive activity during the summer months.
At the close of the Housing Authority hearing, the Hearing Officer ruled to terminate petitioner’s tenancy at the Wagner Houses. Although the Housing Authority Management Manual grants hearing officers discretion to determine the appropriate disposition, in the disposition, the Hearing Officer appeared to mistakenly believe that she was required to terminate petitioner’s tenancy.
Further, the allegations in the specifications are ambiguous. It is unclear whether it is alleged that petitioner engaged in separate drug-related activities on dates in 2004 and 2005.
The Hearing Officer failed to fully consider all of the mitigating circumstances.
Because the Hearing Officer failed to make specific findings of fact with regard to material issues raised at the hearing and failed to make a determination in writing as to whether the mitigating factors should affect the disposition, the disposition was made in violation of the Housing Authority’s own procedures.
Petitioner offered uncontroverted testimony at the hearing that he had been drug free since at least April of 2004. The *747 Housing Authority offered no evidence to the contrary, other than the ambiguous charges referenced above.
The Hearing Officer’s willingness to characterize petitioner’s prior activities as multiple, recent crimes, even though not supported by any evidence on the record, and her mistaken belief that all drug-related cases must lead to termination of tenancy demonstrate her inability to act as an impartial arbiter of the facts within the bounds of applicable law.
And, because the disposition was rendered upon a mistake of law and demonstrates prejudice, it is a violation of due process, contrary to the Housing Authority’s own procedures, and should be reversed or remanded for de novo proceedings.
Respondent’s Contentions
The Housing Authority terminated the tenancy of petitioner after he conspired with drug traffickers to sell a controlled substance during the period from February 18 to August 19, 2003, and petitioner sold heroin on the same block as his building on April 29, 2003 in furtherance of the conspiracy. The Housing Authority afforded petitioner a due process hearing on several charges involving petitioner’s criminal activity and his failure to abide by Housing Authority rules and regulations. Petitioner admitted the charges for nondesirability based on his conspiracy to distribute narcotics and his sale of heroin in furtherance thereof. Petitioner’s criminal convictions for criminal sale of a controlled substance in the fourth degree and conspiracy in the second degree estop petitioner from relitigating his criminal activity. Nevertheless, petitioner argues termination is unduly harsh because he purportedly: (1) does not have alternative living arrangements and does not have family or friends to whom he can turn; (2) has been compliant with his parole; (3) suffers from various medical conditions; (4) is an involved parent to his daughter who does not live with him; and (5) is a valued member of the community. Petitioner waived his arguments concerning his prospective homelessness, his community activities, and his relationship with his daughter by not raising them at the hearing. In addition, the social services report petitioner submits in support of his claims is outside the record because he failed to introduce it at the hearing. In any event, none of these circumstances militates against termination because petitioner has endangered his neighbors by conspiring with drug traffickers to sell controlled substances over a period of time and sold heroin on the same block as his building in *748 furtherance of that conspiracy. In addition, petitioner’s claim that he has no one to turn to is contradicted by the social services report, in which Rene Yancey is identified as a family resource, and, petitioner’s own assertion that he has reestablished a loving relationship with the mother of his daughter.
The Appellate Division has also held that prospective homelessness does not insulate a tenant from termination. Reducing the vibrant public housing community to what petitioner characterizes as housing of last resort is small comfort to the Housing Authority’s law abiding residents who should not be sentenced to live alongside those who engage in illegal drug activity.
Petitioner’s compliance with his parole is not evidence of rehabilitation but a required condition of his release from prison. The Housing Authority’s determination may also serve to deter others from flouting the law, their own lease obligations and Housing Authority rules and regulations. Thus, the Hearing Officer properly determined that notwithstanding petitioner’s purported mitigation evidence, termination was warranted.
Petitioner further argues that termination was unduly harsh because the charges are based on a single event. However, the charges were based on petitioner’s conspiracy and sale of a controlled substance, two separate crimes with different elements under the Penal Law. Moreover, the fact that petitioner pleaded guilty to the conspiracy charge months after he had pleaded guilty to the drug sale charge, subjecting himself to a much longer criminal sentence belies petitioner’s claim that his criminal misconduct is based on a single event. The criminal court judge refused to sentence petitioner to a drug treatment program, determining a jail sentence to be more appropriate, and petitioner’s guardian ad litem himself agreed to the appropriateness of incarceration over treatment. Even assuming the charges stemmed from a single incident of criminal misconduct, given the blight of illegal drugs in public housing, the Housing Authority properly terminated petitioner’s tenancy.
Petitioner argues the Housing Authority violated his due process rights because the charges were impermissibly vague and erroneous in that they suggested petitioner committed two separate acts of misconduct. This court should reject petitioner’s claim for several reasons. First, petitioner waived this claim by failing to timely object to the charges at the outset of the hearing. Moreover, because petitioner admitted the charges based on his conspiracy and drug sale at his hearing, he cannot now argue *749 that these charges were impermissibly vague or erroneous. In addition, the charges were sufficiently specific because they apprised petitioner of the charges against him and allowed him to prepare an adequate defense. Even if the charges were not as specific as they could have been in identifying the dates petitioner committed this misconduct as opposed to his arrests for that misconduct, any lack of specificity was harmless because petitioner was certainly aware of the underlying activity inasmuch as he had fully allocuted to it during his criminal plea proceedings. Petitioner’s claim that the charges and Hearing Officer’s decision were erroneous in that they indicated petitioner committed two separate acts is equally unavailing because petitioner did in fact commit two separate crimes.
Analysis
CPLR 7803 states that the court review of a determination of an agency, such as the Housing Authority, consists of whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty imposed. (CPLR 7803 [3]; see Windsor Place Corp. v New York State Div. of Hous. & Community Renewal, 161 AD2d 279 [1st Dept 1990]; Mazel v Mirabal, 138 AD2d 600 [2d Dept 1988]; Bambeck v State Div. of Hous. & Community Remewal, 129 AD2d 51 [1st Dept 1987], lv denied 70 NY2d 615 [1988].) An action is arbitrary and capricious, or an abuse of discretion, when the action is taken “without sound basis in reason and . . . without regard to the facts.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].) Rationality is the key in determining whether an action is arbitrary' and capricious or an abuse of discretion. (Matter of Pell v Board of Educ., 34 NY2d at 231.) The court’s function is completed on finding that a rational basis supports the Housing Authority’s determination (see Matter of Howard v Wyman, 28 NY2d 434 [1971]). Where the agency’s interpretation is founded on a rational basis, that interpretation should be affirmed even if the court might have come to a different conclusion (see Matter of Mid-State Mgt. Corp. v New York City Conciliation & Appeals Bd., 112 AD2d 72 [1st Dept 1985], affd 66 NY2d 1032 [1985]).
Moreover, where, as here, the agency’s determination involves factual evaluation within an area of the agency’s expertise and *750 is amply supported by the record, the determination must be ac-. corded great weight and judicial deference. (See Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987].) Courts are required to “resolve [any] reasonable doubts in favor of the administrative findings and decisions” of the responsible agency. (Matter of Town of Henrietta v Department of Envtl. Conservation of State of N.Y., 76 AD2d 215, 224 [4th Dept 1980]; see also Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]; Matter of City of Rome v New York State Health Dept., 65 AD2d 220, 225 [4th Dept 1978], lv denied 46 NY2d 713 [1979].)
And, “[w]here evidence conflicts, issues of credibility are the province of an administrative hearing officer, since ‘the decisions by an Administrative Hearing Officer to credit the testimony of a given witness is largely unreviewable by the courts.’ ” (Matter of Wooten v Finkle, 285 AD2d 407, 408 [1st Dept 2001], quoting Matter of Berenhaus v Ward, 70 NY2d 436, 443 [1987].) And the courts may not weigh the evidence or reject the conclusion of the administrative agency where the evidence is conflicting and room for choice exists (Berenhaus, 70 NY2d at 444; Matter of Stork Rest. v Boland, 282 NY 256, 267 [1940]; Matter of Acosta v Wollett, 55 NY2d 761 [1981]; Matter of Verdell v Lincoln Amsterdam House, Inc., 27 AD3d 388, 390 [2006]).
Petitioner’s Convictions
First, the court wishes to clarify the issue of whether petitioner had multiple convictions. The record contains two “Certificates of Disposition Indictment.” Both are dated July 24, 2006. Case no. 06417-2004 alleged “[t]hat on 4/26/2005 [petitioner] was convicted of the crime(s) below . . . Criminal sale of a Controlled Substance 4th Degree PL 220.23 . . . Imprisonment = 9 month(s).” Case no. 02743-2005 alleged “[t]hat on 10/03/2005 [petitioner] was convicted of the crime(s) . . . Conspiracy 2nd Degree PL 105.15 . . . Imprisonment = 1 Year(s) to 3 Year(s) Concurrent To: 06417-2004.” (Emphasis added.)
However, the transcripts of the allocutions indicate as follows:
Case no. 06417-2004 “The charge is that on . . . April 29 of 2003, in New York County, that you knowingly and unlawfully sold a narcotic drug to another person.” And, the controlled substance was heroin.
Case no. 02743-2005
“The charge is that you and all these people named *751 with you on this indictment, . . . in New York County, between February 18 of 2003 and August 19 of 2003, in that period, that you all had an agreement, an understanding a plan that at least sale of a controlled substance in the second degree ... in furtherance of this plan . . . that you did the following as part of that conspiracy: ... It is charged that on April the 29th of 2003, near 120th Street and 1st Avenue, that you sold a narcotic drug to another person . . ..”
Petitioner had two convictions, for two distinct charges, resulting in two distinct sentences, sentences to run concurrently. Although the allocution indicates that the April 29th incident is included on each conviction, the later conviction is broader than selling a narcotic drug, the sale is in furtherance of the conspiracy for which petitioner was charged.
One of petitioner’s arguments rests on the premise that since petitioner committed only one offense, the Housing Authority’s decision to terminate petitioner’s tenancy was an abuse of discretion “[i]n that the penalty of termination was excessive relative to Petitioner’s complained of acts, was arbitrary and capricious in that it was based on erroneous factual findings.”
To the degree that petitioner’s argument rests on a faulty premise, the argument fails.
But, the court must note that this is not a situation as stated by Chief Justice Rehnquist in Department of Hous. & Urban Dev. v Rucker (535 US 125, 127 [2002]) wherein petitioner is a drug dealer “imposing a reign of terror on public and other federally assisted low-income housing tenants.”
Applicable Law, Rules and Regulations
As to petitioner’s argument that the Housing Authority misapplied the relevant law and regulations, the court is guided by the Court of Appeals in Matter of Howard v Wyman (28 NY2d 434 [1971]), wherein the Court stated:
“It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. (See, e.g., Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108; Matter of Colgate-Palmolive-Peet Co. v. Joseph, 308 N. Y. 333, 338; Udall v. Tallman, 380 U. S. 1, 16-18; Power Reactor Co. v. Electricians, 367 U. S. 396, 408.) As this court wrote in the Mounting & *752 Finishing Co. case (294 N. Y., at p. 108), ‘statutory construction is the function of the courts “but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court’s function is limited” (Board v. Hearst Publications, 322 U. S. 111, 131). The administrative determination is to be accepted by the courts “if it has ‘warrant in the record’ and a. reasonable basis in law” (same citation). “The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body” (Rochester Tel. Corp. v. U. S., 307 U. S. 125, 146).’ ” (Howard at 438.)
42 USC § 1437d (1) (6) provides that each
“public housing agency shall utilize leases . . . providing] that. . . any drug-related criminal activity on or off [federally assisted low-income housing] premises, engaged in by a public housing tenant, any member of the tenant’s household, or any guest or other person under the tenant’s control, shall be cause for termination of tenancy.”
Section 1437d (Z) (6)’s plain language unambiguously requires lease terms that give local public housing authorities the discretion to terminate the lease of a tenant when a member of the household or a guest engages in drug-related activity.
But, the key is that the Housing Authority, pursuant to Rucker, has discretion.
Probation
NYCHA Management Manual (Termination of Tenancy), chapter VII, 6 provides in part as follows:
“6. Hearing Officer’s Decision “Officer may find that the tenant is eligible for continued occupancy. However, if the Hearing Officer finds that any of the charges have been proven, (s)he may make any of the following dispositions:
“Termination of tenancy;
“Probation: . . .
“Probation, for a term not to exceed one year, may be given in a case where the charges against the tenant have been proven, but there is reason to believe that the conduct or condition that led to the charge of non-desirability may not recur or may *753 have been corrected, or if the tenant is taking or is prepared to take steps to do so.” (Emphasis added.)
As the court noted in Howard, the agency interpretation and application of the law should be upheld “if not irrational or unreasonable.” (28 NY2d at 438.)
This court finds that the Hearing Officer mistakenly believed and ruled that the only possible determination was termination of petitioner’s tenancy. The Hearing Officer not only misconstrued Department of Hous. & Urban Dev. v Rucker, but also NYCHA Management Manual (Termination of Tenancy), chapter VII, 6. Both confer discretion on the issue of termination. And probation is an option available as a determination.
Conclusion
Based on the foregoing, it is hereby ordered and adjudged that the petition of Craig Yancey is granted to the extent that this case is remanded for reconsideration consistent with applicable law and Housing Authority regulations.