**Florence TINNIN, Plaintiff,**

v.

**SECTION 8 PROGRAM OF the CITY OF WHITE PLAINS, White Plains Community Development Office/Urban Renewal Agency, Defendants.**

Case No. 08–CV–9537 (KMK).

United States District Court, S.D. New York.

Jan. 6, 2010.

Karen Beth Tenenbaum, Esq., Legal Services of the Hudson Valley, White Plains, NY, for Plaintiff.

Arthur George Gutekunst, Esq., Doreen Rich, Esq., City of White Plains, White Plains, NY, for Defendants.

### OPINION AND ORDER

KENNETH M. KARAS, District Judge:

Plaintiff Florence Tinnin ("Plaintiff" or "Ms. Tinnin") brings this suit seeking reinstatement of her Section 8 rental subsidy benefits and reimbursement of her benefits since September 2008 from Defendants Section 8 Program of the City of White Plains ("Section 8") and the White Plains Community Development Office/Urban Renewal Agency ("CDO/URA") (collective-

ly, "Defendants"). Ms. Tinnin alleges that Defendants violated her due process rights by depriving her of Section 8 benefits. Defendants have moved for summary judgment, and Plaintiff has cross-moved for summary judgment. The following reasons, the Court grants Defendants' motion, and denies Plaintiff's motion.

## I. Background

### A. Factual Background

Plaintiff is a single, disabled 67–year old woman, who has lived at 90 North Kensico Avenue in White Plains for twenty years. (Compl. ¶¶ 7, 9.) Beginning in 2003, Plaintiff participated in Defendants' Section 8 program, receiving $519 toward her $609 monthly rent. (*Id.* ¶¶ 8, 10.) Defendants operate and manage the federally subsidized residential tenant Section 8 program as a designated public housing agency ("PHA"). (*Id.* ¶ 11.)[1] On November 18, 2005, Ms. Tinnin was arrested in her Section 8 home with 18.8 grams of cocaine and money in the presence of her two-year-old granddaughter. (*Id.* ¶ 27; Defs.' Rule 56.1 Statement Ex. ("Defs.' Ex.") D at 4; Def's Ex. J at 1.) She was charged with criminal sale of a controlled substance, but subsequently plead guilty to a lesser charge of illegal possession of a controlled substance in the seventh degree. (Compl. ¶ 27; Defs.' Ex. D at 4.)

As a member of the Section 8 program, Ms. Tinnin held a spot coveted by many needy and law-abiding White Plains residents. There are currently 232 individuals or families on the waiting list for the benefits that Ms. Tinnin enjoyed. (Defs.' Ex. C ¶ 30.) This list includes fifty-five people who are disabled, thirty-four who are elderly, and families living with a combined total of 1080 children. (*Id.* ¶¶ 21–29.) To make room for these deserving residents, PHA seeks to evict Section 8 participants who deal drugs. (*Id.* ¶ 31.)

On June 23, 2008, Ms. Tinnin received a letter from Section 8 Administrator Louis DeFrancesco, informing her that Defendants proposed terminating her Section 8 benefits for violation of 24 C.F.R. § 982.551(*l*), based on her drug conviction. (Compl.¶ 26.) Defendants have explained that the lapse of time between Ms. Tinnin's conviction and the proposed denial of Section 8 benefits was because the certificate of conviction did not issue until December 11, 2007, and Defendants waited for the certificate before proceeding against Ms. Tinnin. (Defs.' Ex. D. at 7.) Ms. Tinnin requested an informal grievance hearing, pursuant to 24 C.F.R. § 982.555(a), and Patricia Barnes, Esq. ("Hearing Officer Barnes") was appointed as the hearing officer to conduct the informal grievance hearing in accordance with 24 C.F.R. § 982.555(e)(4). (Compl.¶¶ 29–31.) The hearing took place on July 23, 2008, with Plaintiff, Hearing Officer Barnes, Mr. DeFrancesco, and Dionne Lewin, a Section 8 Coordinator, in attendance. (*Id.* ¶ 31.)

At the hearing, Ms. Tinnin admitted that she sold cocaine from her Section 8 Apartment, allowing her customers access to the apartment complex where she lived. (Defs.' Ex. J at 4.) Ms. Tinnin stated that she understood that her criminal activity was wrong and that it constituted a violation of the Section 8 Program. (*Id.*) Ms. Tinnin presented letters from family members, neighbors, and friends, attesting to her good character, regret for her illegal behavior, and to the fact that she was no longer engaging in any criminal activities. (*Id.*)

---

**1.** The "Section 8 Program of the City of White Plains" is not a legal entity. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") 1 n. 1.) Nonetheless, the Court will adopt Defendants' willingness to be collectively referred to as "Defendants" in this Opinion. (*Id.*)

On August 5, 2008, Hearing Officer Barnes issued her Findings of Fact and Decision. She concluded that:

> There is no question that termination is justified under [24 C.F.R. § 982.551(*l* )]. The City was correct in indicating that none of the mitigating factors mentioned in § 981.551 are present in this case....
>
> ....
>
> ... [W]hile the City of White Plains was correct in terminating Ms. Tinnin from the Section 8 Program under 24 C.F.R. § 982.551, she should be reinstated to the program based on the specifics of 24 C.F.R. § 982.553.

(Defs.' Ex. J at 3–4.)[2] Hearing Officer Barnes further noted that "[w]ithout this Section 982.533 ... there would be no question about termination." (*Id.*)

On August 14, 2008, Ms. Tinnin received a letter entitled "Notice of Determination" from Defendants, informing her that her Section 8 benefits would be terminated. (Compl. ¶ 36; Defs.' Ex. G.) Specifically, Defendants stated:

> The Hearing Officer found termination justified and further recommended reinstatement to the program upon certification that you are not "currently engaged in criminal activity." However, the Hearing Officer's recommendation for re-admission was premature, at best, as the purpose of the hearing was to determine if termination is warranted.... As to the current matter, I concur with the Hearing Officer's determination that termination is justified.

(Compl., Ex. G.)

Defendants justified their decision to ignore Hearing Officer Barnes' recommendation that they reinstate Plaintiff by pointing to 24 C.F.R. § 982.555(f). (Mem. of Law in Support of Defs.' Mot. For Summ. J. ("Defs.' Mem.") 5.) That provision states that a PHA "is not bound by a hearing decision" that "exceeds the authority of the person conducting the hearing under PHA hearing procedures," or is "[c]ontrary to HUD regulations, or requirements, or otherwise contrary to federal, State, or local law." 24 C.F.R. § 982.555(f). Defendants explained that Hearing Officer Barnes only had authority to determine whether or not termination was appropriate; she had no authority to recommend reinstatement. (Defs.' Mem. 5.)

### B. *Procedural History*

Ms. Tinnin filed her Complaint on November 6, 2008, seeking declaratory and injunctive relief. On the same day, the Court denied Plaintiff's application for a temporary restraining order but signed an Order to Show Cause why a preliminary injunction, ordering Defendants to pay Plaintiff housing benefits until the resolution of this suit, should not issue. (Dkt. No. 4.) The Court scheduled a preliminary injunction hearing for November 19, 2008. On November 24, 2008, the Court denied Plaintiff's motion for a preliminary injunction because Plaintiff failed to show a likelihood of success on the merits. (Dkt. No. 17.) Specifically, the Court agreed with Defendants that Hearing Officer Barnes did not have the authority to recommend reinstatement. (Defs.' Ex. O at 18 ("[Barnes'] ruling not only decided that termination was appropriate, but that

---

**2.** Although Hearing Officer Barnes cited 24 C.F.R. § 982.551, it is 24 C.F.R. § 982.552(c)(2)(i), that provides a non-exhaustive list of mitigating factors that a PHA may consider. These factors are: "the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. § 982.552(c)(2)(i).

plaintiff should in fact be readmitted to the Program. This is authority that she did not have.").) In so holding, the Court rejected Plaintiff's argument that "the Hearing Officer's ruling was that Plaintiff's termination by [D]efendants was wrongly done and [the Hearing Officer] merely expressed that ruling as a reinstatement of her Section 8 benefits." (*Id.* 16–17.)

On April 13, 2009, Defendants moved for summary judgment. (Dkt. No. 25.) In opposing Defendants' motion for summary judgment (and in cross-moving for summary judgment), Plaintiff makes a new argument. She now maintains that, because Hearing Officer Barnes exceeded her authority by ruling on whether Plaintiff should be *readmitted,* the Court must remand so that a hearing officer can determine anew whether Plaintiff should have been *terminated.*[3] The Court held oral argument on these motions on December 22, 2009.

## II. Discussion

### A. Standard of Review

Summary judgment may be granted where it is shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir.2003). A party seeking

summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.,* 432 F.3d 428, 433 (2d Cir.2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.,* 536 F.3d 140, 145 (2d Cir.2008) (internal citations omitted). A fact is material when "it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007) (internal quotation marks omitted). At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y. City Transit Auth.,* 735 F.Supp. 1205, 1212 (S.D.N.Y.1990). A court's goal should be to "isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

### B. Analysis

The United States Housing Act, 42 U.S.C. § 1437 *et seq.* ("The Housing Act"), was enacted to provide housing assistance for low-income families. The Housing Choice Voucher Program (the "Section 8 Program") allows low-income families to apply to a local PHA and, if approved, the local housing authority will

---

**3.** The Court notes that Plaintiff cross-moved for summary judgment without going through the Court's Individual Practices. The Court therefore denied Plaintiff's motion without prejudice. (Dkt. No. 34.) Because it is now apparent that Plaintiff's arguments in opposi-

tion to Defendants' summary judgment motion also support her motion for summary judgment, the Court advised the Parties at oral argument that it would construe Plaintiff's opposition also as a cross-motion for summary judgment.

issue a Section 8 voucher to the family. *See* 24 C.F.R. § 982.302(a). With this voucher, the family may then locate a suitable apartment in the private market and enter into a lease that is in accordance with the applicable housing authority guidelines. *See id.* § 982.302(b)-(d). In accordance with the Housing Act, the U.S. Department of Housing and Urban Development ("HUD") published regulations to implement and administer the Section 8 Program at 24 C.F.R. Part 982. The pertinent regulations provide a right to an informal hearing to applicants who are terminated from the Section 8 Program. *See* 24 C.F.R. §§ 982.551–.553, .555.

Section 982.551(*l*) states that "members of the household may not engage in drug-related criminal activity ... that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." Public Housing Authorities "must establish standards that allow the PHA to terminate assistance for a family if the PHA determines that any family member has violated the family's obligation under § 982.551 not to engage in any drug-related criminal activity." 24 C.F.R. § 982.553(b)(1)(iii). Section 982.553(c) states that benefits may be terminated if "based on a preponderance of the evidence, ... the household member has engaged in the activity, regardless of whether the household member has been arrested or convicted for such activity." Prior to termination, a participant is entitled to an informal grievance hearing conducted by a hearing officer. *See* 24 C.F.R. § 982.555(a)(v), (e)(4).

At a hearing to determine whether termination of Section 8 benefits is appropriate, the hearing officer may consider "all relevant circumstances, such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effects of denials or terminations of assistance on other family members." 24 C.F.R. § 982.552(c)(2)(i). Section 982.555(f) allows the public housing authorities to ignore hearing decisions that are contrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law.

In her decision, Hearing Officer Barnes found that "[t]here is no question that termination is justified under" § 982.552, and that "[t]he City was correct in indicating that none of the mitigating factors mentioned in § 981.55[2] are present in this case." (Defs.' Ex. J at 4.) But, she went on to rule that "while the City of White Plains was correct in terminating Ms. Tinnin ... she should be reinstated to the program based on the specifics of 24 C.F.R. § 982.553." (*Id.*) Hearing Officer Barnes further stressed the importance of § 553, noting that "[w]ithout this Section 982.533 ... there would be no question about termination." (*Id.*) Specifically, Hearing Officer Barnes referred to the portion of § 553(a) that provides:

> The PHA may establish a period before the admission decision during which an applicant must not to have engaged in the activities [sexual misconduct] specified in paragraph (a)(2)(i) of this section ("reasonable time").

> If the PHA previously denied admission to an applicant because a member of the household engaged in criminal activity, the PHA may reconsider the applicant if the PHA has sufficient evidence that the members of the household are not currently engaged in, and have not engaged in, such criminal activity during a reasonable period ... before the admission decision.

24 C.F.R. § 982.553(a)(2)(ii)(B)-(C). Section 982.553(a) is entitled "Denial of Admission," whereas § 982.553(b) is named

"Terminating Assistance." Unlike the approach in § 553(a) to admission, § 553(b) does not contain a provision that allows a PHA (or a hearing officer) to reconsider a *termination* decision after a period of good behavior. Thus, because Hearing Officer Barnes stated that Ms. Tinnin was properly terminated but should be "reinstated," and because she relied solely on a provision (§ 982.553(a)(2)(ii)(B)-(C)) that applies to admission but not to termination, this Court, in denying Plaintiff's preliminary injunction, found that her decision was "in effect" a readmission decision, and was therefore "ultra vires." (Defs.' Ex. O at 21.)

Plaintiff does not question this ruling. Instead, she embraces it, arguing that because Hearing Officer Barnes exceeded her authority in ruling that Ms. Tinnin should be readmitted, the entire decision is a nullity—even the ruling on whether termination is proper. (Mem. of Law in Supp. of Pl.'s Cross–Mot. for Summ. J. and in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") 4–5.) Thus, Plaintiff asks the Court to remand so that Hearing Officer Barnes may determine anew whether termination is appropriate. (*Id.* 5.)

The Second Circuit has consistently held that a court need not remand to an administrative agency if remand would be futile. *See Xiao Ji Chen v. U.S. Dept. of Justice,* 471 F.3d 315, 338 (2d Cir.2006) (noting that "the general principle of futility" holds that "an error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error"); *Li v. I.N.S.,* 453 F.3d 129, 136–37 (2d Cir.2006) ("It is a long-standing principle of administrative law that agency errors do not justify a remand when remand[ing] would be an idle and useless formality.") (citations and internal quotations marks omitted); *NLRB v. Am. Geri-Care, Inc.,* 697 F.2d 56, 64 (2d Cir.1982) ("[R]eversal and remand are [not] required

each and every time an administrative agency assigns a wrong reason for its action; rather, remand [is required] *only* where there is a significant chance that but for the error, the agency might have reached a different result.") (emphasis in original); *cf. NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (warning courts not to "convert judicial review of agency action into a ping-pong game").

Plaintiff points to three alleged errors that she claims justify remand. First, Hearing Officer Barnes "meant to refer to 24 C.F.R. § 982.552 when she in fact referred to 24 C.F.R. § 551." (*Id.* 4.) While the Court agrees with the premise, the error does not justify a remand because it is inconceivable that, but for this mistake, Hearing Officer Barnes would have found termination inappropriate, particularly given her unequivocal finding that termination was appropriate because of Plaintiff's drug-related conviction.

Second, Plaintiff notes the Court's finding that "the reason ultimately why the Hearing Officer decided ... that Plaintiff should be allowed to continue to receive Section 8 benefits was because of" 24 C.F.R. § 982.553(a)(2)(ii)(B) and (C). (Pl.'s Mem. 4.) But, as noted above, the Court has already ruled that these provisions apply only to admission, and there is no similar provision that applies to termination. Plaintiff contends that "[i]t is impossible to excise" the portion of Hearing Officer Barnes' decision that relies on § 553(a)(2)(ii)(B) and (C) "without frustrating [her] apparent intention that Ms. Tinnin remain in the program." (Pl.'s Mem. 5.) Plaintiff's argument appears to be that, had Hearing Officer Barnes been aware that 553(a)(2)(ii)(B) and (C) did not apply to termination, she might have found a different basis for thwarting Plaintiff's termination. But such an argument is flatly

contradicted by the decision itself, which states that "[w]ithout this section of 982.533 or no reference to it in 981.551, there would be no question about termination." (Defs.' Ex. J at 4.) Therefore, Hearing Officer Barnes would had to have reached the same decision regarding termination had she not erred in believing she could recommend readmission under § 553(a)(2)(ii)(B) and (C).[4]

Third, Plaintiff cites the Court's prior ruling that Hearing Officer Barnes did not have the authority to recommend that Plaintiff be *readmitted.* (Pl.'s Mem. 5.) This error, Plaintiff contends, requires remand so that Hearing Officer Barnes can reconsider her decision regarding *termination.* But, again, Hearing Officer Barnes was unequivocal about her termination decision: "There is no question that termination is justified. . . . [T]he City of White Plains was correct in indicating that none of the mitigating factors mentioned in § 981.55[2] are present in this case." (Defs' Ex. J at 4.) Indeed, as the Court has already determined, "[c]learly, Hearing Officer [Barnes] agreed that under the termination regulations [Ms. Tinnin] should have been" terminated. (Defs.' Ex. O at 20–21.) Accordingly, a remand to reconsider the termination question would be futile. Indeed, remand would be particularly inappropriate here in light of the administrative scheme that contemplates PHAs ignoring ultra vires decisions, rather than sending them back to Administrative Law Judges (ALJs) for reformulation. *See* 24 C.F.R. § 982.555(f) ("The PHA is not bound by a hearing decision . . . that . . . exceeds the authority of the person conducting the hearing under PHA hearing procedures [or is] [c]ontrary to HUD regulations, or requirements, or otherwise contrary to federal, State, or local law.").

That Hearing Officer Barnes acted ultra vires in trying to keep Plaintiff in her apartment does not mean she should be given a second attempt to do the same. It bears noting that Hearing Officer Barnes herself acknowledged that the question before her was whether Defendants properly terminated Plaintiff under § 982.551(*l*). (Defs.' Ex. J at 3.) Having answered that question in the affirmative, Hearing Officer Barnes' task was at an end. There was no basis, and there would be none on remand, to consider the separate question of Plaintiff's readmission to the program. That decision, in the first instance, belongs to Defendants, but only after Plaintiff applies for readmission. Having not taken that step, Plaintiff may not ask Hearing Officer Barnes to consider that question.

The cases cited by Plaintiff are not to the contrary. None involve an agency decision that correctly decided an issue within its authority, but then went on to reach a matter outside its authority. Instead, each case presents the unremarkable situation in which a court found that an ALJ committed legal error regarding an issue properly before the ALJ, and, accordingly, remanded for reconsideration, having been asked to do so by the party that lost in the administrative hearing. For instance, Plaintiff cites *Yancey v. N.Y. City Hous. Auth.,* 23 Misc.3d 740, 879 N.Y.S.2d 661 (Sup.Ct.2009). There, the court found that "the Hearing Officer mistakenly believed

---

4. If any portion of § 982.553(a) could apply to Ms. Tinnin, it would be 553(a)(1)(i)(a) which requires the PHA to "prohibit admission to the program of an applicant for three years from the date of eviction if a household member has been evicted from federally assisted housing for drug-related criminal activity," unless that person has "completed a supervised drug rehabilitation program approved by the PHA." There is no evidence that Ms. Tinnin has completed such a program. Thus, because Plaintiff was evicted for a drug-related crime, under 553(a)(1)(i)(a) she would be required to wait three years to apply for readmission.

... that the only possible determination was termination," while, in fact, the hearing officer had "discretion on the issue of termination." *Id.* at 671 (emphasis added). Thus, in *Yancey,* remand was a useful exercise because it was unclear how the hearing officer might exercise his new-found discretion not to terminate. The other cases cited by Plaintiff are similarly unilluminating. *See, e.g., Davis v. Hernandez–Pinero,* 21 H.C.R. 449A (N.Y.Sup. Ct.1993) (attached to Pl.'s Mem.) (remanding where an ALJ committed legal error and, consequently, did not reach a factual question); *Boston Hous. Auth. v. Grant,* (Boston Hous. Ct.2005) (attached to Pl.'s Mem.) (holding that a hearing officer improperly found that he did not have discretion on whether to terminate petitioner's benefits, and remanding to allow the officer to exercise that discretion). Again, in none of these cases did the ALJ make a correct decision, let alone a correct decision that was excisable from the erroneous one outside the ALJ's authority.

In the end, Plaintiff really does not complaint about the Hearing Officer's decision; to the contrary, she cites it in arguing that Defendants improperly ignored its conclusion that she be reinstated. Indeed, this core claim is the basis of Plaintiff's lawsuit. But, because the Court finds that Hearing Officer Barnes's decision regarding termination was correct, and that that was the only question properly before her, the Court finds no legal or constitutional foul in Defendants terminating Plaintiff from the Section 8 program. Therefore, there is no cause to remand this case.[5]

### III. Conclusion

For the reasons stated herein, the Court grants Defendants' motion for summary judgment and denies Plaintiff's cross-motion for summary judgment. The Clerk is respectfully directed to remove the pending motion (Dkt. No. 25.), enter judgment for Defendants, and close this case.

SO ORDERED.

---

5. Plaintiff appears to abandon her procedural due process claim. Defendants' moving papers demonstrate that Plaintiff was given notice and an opportunity to be heard in accordance with *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiff did not respond to this argument in her brief or otherwise support her due process claim. Accordingly, the Court grants Defendants' motion for summary judgment on this claim. *See Singleton v. City of Newburgh,* 1 F.Supp.2d 306, 312 (S.D.N.Y.1998) (deeming claim "abandoned" and granting summary judgment where it was alleged in the complaint but "not raised elsewhere in the record"); *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.,* No. 92–CV–1735, 1998 WL 118174, at *28 (S.D.N.Y. March 16, 1998) (deeming claim "abandoned" and granting summary judgment where plaintiff did not address claim in response to defendant's summary judgment motion); *Anti–Monopoly, Inc. v. Hasbro, Inc.,* 958 F.Supp. 895, 907 n. 11 (S.D.N.Y.) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd,* 130 F.3d 1101 (2d Cir. 1997).